FILED

2008 MAR 11 P 4:03

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

**GLOBAL AIRCRAFT DISPATCH INC.** )
**Plaintiff** )
**v.** )
**MARY ANNE BIXBY** )
**Defendant** )
**SAMUEL AMOATENG** )
**Defendant** )
**EDWARD ANMAHIAN** )
**Defendant** )

**Case No.** 1:08cv241

**MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION**

COMES NOW Plaintiff, Global Aircraft Dispatch Inc., ("Global") and presents this Memorandum in Support of Motion for a Preliminary Injunction, until such time as this Court can hear the full merits of this case, prohibiting Defendants Mary Anne Bixby, Samuel Amoateng, and Edward Anmahian, from soliciting and encouraging the resignation of Global employees and making disparaging and untrue statements to Global's clients regarding Global's owners and their business practices. Global further requests return of all its confidential and proprietary information.

**STATEMENT OF FACTS**

Global is in the business of providing staff to airlines in connection with passenger ticketing, boarding, baggage handling, flight operations and related support services at JFK

Airport in Jamaica, New York and Dulles Airport in Dulles, Virginia. As of February 21, 2008, Global had contracts to provide such services to Ethiopian Airlines, Lufthansa, Aeroflot Russian Airlines, and Air France Societe for regularly scheduled flights which required staff on a daily basis on average of 45 employees. (The contracts with these airlines are hereinafter referred to as "Airline Contracts").

Defendant Mary Anne ("Bixby") was the general manager for Global's office serving Dulles Airport since April of 2006 until February 21, 2008 when she abruptly and without notice resigned from Global along with two key former employees defendants Samuel Amoateng ("Amoateng") and Edward Anmahian ("Anmahian"). The abrupt resignation left Global with no manager at Dulles to manage the operations of the company on February 21, 2008. Upon learning of the resignations, Global promptly sent managers from New York to Dulles to cover the operation.

Upon arriving at Dulles Airport, Global managers found the office in complete disarray. The Defendants erased all information from Global's computers which contained critical information needed to operate the business. Furthermore, Defendants misappropriated confidential, proprietary, and trade secret information including, but not limited to electronic and paper records containing contracts, training manuals, customer service handbooks, lists and records of employee and client information, and financial information. Removal of this information has severely disrupted Global's operations at Dulles and in New York.

Moreover, in addition to defendants, 12 additional employees needed to handle the flights for February 21, 2008 and in the days immediately following thereafter called in and resigned from the company, at the direction and urging of Defendants. With this substantial immediate reduction in force, consisting of 15 employees as of the date of this filing) Global has been

unable to comply with its contractual requirements with the airlines.

As a result of the Defendants' actions, Global lost its contract with Ethiopian Airlines because it was without sufficient personnel to perform the contract. With respect to the other Airline Contracts, Global has been unable to provide all staff required by the contracts which have placed Global in breach of said contracts.

Additionally Defendants Bixby, Amoateng and Anmahian have made false and defamatory statements to airline personnel and employees of Global with respect to the business practices of the company which, combined with the inability of Global to provide service in accordance with the Airline Contracts, have caused Global's existing clients to threaten to terminate the Contracts.

Despite Plaintiff's demand to cease and desist, Defendants have continued to engage in the foregoing conduct. On February 23, 2008, Global, through Counsel, sent Bixby a letter demanding that she cease and desist the conduct in violation of her Employment Agreements and fiduciary duties, and various Virginia statutory provisions. The letter also requested that she contact the legal office and make arrangements to return all company information that she removed.

On February 27, 2008, having heard no response from Bixby, Global, through Counsel contacted Bixby by phone to ascertain whether she was represented by Counsel and attempt to make arrangements for the return of the company information. Bixby identified herself as Mary Anne Bixby, but hung up upon realization that Counsel for Global was contacting her.

## ARGUMENT

### I. Standard for Temporary Injunction

The traditional standard for a temporary injunction requires the Court to evaluate the following factors: (1) the likelihood of irreparable harm to the plaintiff, if the preliminary injunction is denied. ; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Edmonds v. Gilmore* 988 F. Supp. 945, 955 (E.D. VA., 1997), citing *Manning v. Hunt*, 119 F.3d. 254. It is Plaintiff's burden to establish that an injunction should be granted by the Court. *Id.*

The Fourth Circuit now follows the balance-of–hardship test, where the first step is to balance the likelihood of irreparable harm to the Plaintiff against the likelihood of irreparable harm to the Defendant. *Id.* If the balance is in favor of the Plaintiff, the likelihood of success of the claim is displaced and the Plaintiff only need show the questions raised in the complaint for litigation are *so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. Id.* The Court will view the merits of the case as more important as the probability of irreparable injury diminishes. *Id.*

### II. Global has and Continues to Suffer Irreparable Harm

Global has been placed in a position where it cannot effectively service its customers due to the actions of Defendants. Global has already lost its contract with Ethiopian Airlines, as Defendants have solicited and encouraged the departure of numerous employees, leaving Global unable to provide the personnel needed to carry out its contracts. Despite Global's efforts to hire

personnel to offset the rapid departure of employees solicited and encouraged by Defendants, it is impossible to hire and train new employees fast enough to offset Defendant's conduct.

**III. The Harm suffered by Global outweighs any harm to Defendants**

If Defendants are enjoined from their course of conduct to destroy Global, they suffer no harm. Defendants have nothing to lose by discontinuing their efforts to disparage Global and its owners, and to encourage employees to leave Global. Further Defendants suffer no harm from returning confidential and proprietary data, as they should not have removed it anyway. Any claims by Defendants regarding treatment and conditions of employment, while employed with Global do not justify nor excuse such conduct by Defendants. However, Global stands to have its business destroyed by the conduct of Bixby, Amoateng, and Anmahian.

**IV. Global is Likely to Prevail on the Merits of the Case.**

**A. Breach of Contract**

Global has a signed Employment Agreement and a signed Non-Compete Agreement with Defendant Mary Anne Bixby which has been breached in numerous ways.

**B. Breach of Fiduciary Duty**

All Defendants have clearly breached their Fiduciary Duty to maintain the confidentiality of any information learned during their employment relationship with Global, by divulging information within the industry and retaining Global confidential and proprietary information. An employee or director's misappropriation of trade secrets and misuse of confidential information is a breach of the duty of loyalty. *Community Counseling Service, Inc. v. Reilly*, 317 F.2d 239, 244 (4th Cir. 1963) *Bull v. Logetronics*, 323 F.Supp 115, 1332-33 (E.D. Va. 1971); *Fedderman*, 530 S.E.2d at 673. The Court in *Bulls* adeptly identified the scope to the duty of loyalty:

> An employee is a fiduciary with respect to information which comes to him in the course of his employment. He must exercise the utmost good faith, loyalty and honesty toward his employer... **The duty to be faithful does not cease when the employment ends.** He has a duty .... not to use such confidential information after he has left his employment.

323 F.Supp at 132-33 (emphasis added).

### C. Tortious Interference

Defendants conduct has interfered with and continues to interfere with Global's business, affecting both current and prospective customers. In order to establish a case for tortuous interference, one much show: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Cha v. Korean Presbyterian Church of Washington,* 262 Va. 604, 613 (2001)

Global had a valid contractual relationship with Ethiopian Airlines, Lufthansa, Aeroflot Russian Airlines, and Air France Societe for regularly scheduled flights which required staff on a daily basis on average of 45 employees. Defendants intentionally made disparaging remarks to Global employees urging them to leave Global's employ. Further Defendants made disparaging remarks about Global and its owners to airlines personnel to tarnish Global's reputation. As a result of these actions by Defendants, employees left Global and Global was unable to maintain the necessary employees to efficiently and effectively service the airlines. Global has lost its contract with Ethiopian Airlines and other airlines have threatened the same.

### D. Conspiracy

Defendants have conspired to injure Global's reputation, trade, and business. The actual conspiracy in violation of Va. Code § 18.2-499, is that defendants combined, associated, agree

and/or mutually undertook in concert with one another to damage Global's business by destroying records, making disparaging remarks to airlines about the business and its' owners and soliciting the departure of Global's employees, and to impede the ability of Global to maintain its ongoing business. The conduct engaged in by defendants here has been repeatedly found to constitute a violation of the conspiracy statute. *Fedderman & Company, C.P.A. P.C. v. Longan Associates, P.C.*, 530 S.E.2d 668 (Va. 2000); *Advance Marine Enterprises v. PRC, Inc.*, 501 S.E.2d 148, 154 (Va. 1998).

**E. Misappropriation of Trade Secrets**

Defendants have also misappropriated Global's trade secrets by retaining confidential and proprietary information, including, but not limited to electronic and paper records containing contracts, training manuals, customer service handbooks, lists and records of employee and client information, and financial information, for the purpose of destroying Global's business. Courts have repeatedly held that information in company manuals, including training or product manuals, are trade secrets where they have not been disclosed to the public generally. *Microstrategy, Inc. v. Business Objections, S.A.*, 331 F.Supp. 2d 396, 410 416, 427 (E.D. Va. 2004), *aff'd* 429 F.3d 1344. 1358 (Fed. Cir. 2005); *In re S(3)*, 242 B.R. 872, 877 ( Brankr. D. Va. 1999). Confidential customer lists and information relating to customer needs is protected by the trade secret laws. *North Atlantic. Instruments, Inc. v. Haber*, 188 F.3d 38, 45 (2d Cir. 1999);*Microstrategy, Inc. v. Business Objections, S.A.*, 331 F.Supp. 2d 396, 416, 426.

Finally, Defendants knew their conduct would cripple Global and are pursing this illegal course of conduct to retaliate against Global and its owners for alleged conflicts that occurred while working for Global.

## V. Issuance of a Temporary Injunction will Serve the Public Interest.

The Public has an interest in ensuring the inviolability of valid contracts is observed by parties and protected by the courts. In addition, the public has an interest in the orderly resolution of employment conflicts, to which there are established laws for the protection of employers and employees. Disgruntled employees are simply not allowed to take matters into their own hands, take confidential information and disrupt or destroy the business due to alleged conflicts.

## CONCLUSION

For the reasons stated above, Pinnacle asks the Court to issue a temporary injunction prohibiting (1) Defendants until trial in this matter from retaining confidential and proprietary information and requiring the return of all Global information to the office of Global's Counsel; (2) Defendants until trial in this matter from making disparaging and false statements regarding Global and its owners to airline personnel and Global employees; and (3) Defendants until trial in this matter from soliciting and encouraging employees to leave Global's employ.

Respectfully submitted,

Nicholas H. Hantzes
VSB #23967
HANTZES & REITER
1749 Old Meadow Road, Suite 308
McLean, Virginia 22102
703-378-5000
703-448-4434(fax)

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a copy of the Motion and MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION were served with the Complaint.

Nicholas H. Hantzes